## 73956. JONES v. THE STATE.
(360 SE2d 599)

McMurray, Presiding Judge.

Defendant was convicted of selling more than one ounce of marijuana and possessing a firearm during the commission of a crime. He appeals. *Held*:

1. Defendant contends the trial court erred by overruling his motion for a directed verdict of acquittal upon the possession of a firearm count. In this regard, he contends the evidence was insufficient to enable any rational trier of fact to find beyond a reasonable doubt that he had a firearm *on his person* when the marijuana was sold. OCGA § 16-11-106 (b); *Beal v. State*, 175 Ga. App. 234, 238 (4) (333 SE2d 103). We agree. Evidence that, shortly after the marijuana transaction, a pistol was found in a truck in which defendant was riding is insufficient, in and of itself, to support a finding that defendant had a pistol on his person when the marijuana transaction was consummated. *Beal v. State*, supra. Compare *Teague v. State*, 165 Ga. App. 470 (1) (301 SE2d 667). This is especially so since the truck was occupied by three persons and evidence of defendant's proximity to the pistol was lacking.

The State's contention that a recorded conversation between defendant and the buyer demonstrates that defendant did have a pistol on his person at the time in question is not supported by the record. A review of the transcript of the conversation makes it clear that the buyer's allusion to a pistol concerned a previous meeting which took place between defendant and the buyer; it did not concern the marijuana transaction in question. Moreover, the transcript of the conversation was excluded from evidence by the trial court.

The trial court erred in denying defendant's motion for a directed verdict of acquittal upon the possession of a firearm count.

2. Next, the defendant contends the trial court erred by failing to disqualify a juror, Ms. Driggers, for cause. Ms. Driggers is the daughter of deputy sheriff Ted Parkerson, one of the arresting officers in the case. Parkerson was listed as a potential witness for the State, but he was not called to the witness stand by the prosecution.

During voir dire, defense counsel asked Ms. Driggers whether she would be influenced by the fact that her father was interested in getting a conviction. She responded that she could "be open." The voir dire continued as follows: "[DEFENSE COUNSEL]: But that wouldn't influence you? It would influence you, wouldn't it? MS. DRIGGERS: (nods affirmatively). [DEFENSE COUNSEL]: And if your daddy was interested in a conviction you would lean a little bit toward his side of the case, wouldn't you? Honestly now. MS. DRIGGERS: Yes."

Thereupon, the assistant district attorney questioned Ms. Drig-

gers: "[T]he bottom line is not which way you are leaning, it is whether you can be fair and listen to the evidence with an open mind. Do you think you would be able to do that? MS. DRIGGERS: Yes. [ASSISTANT DISTRICT ATTORNEY]: Now the Judge would give you an oath that you would have to swear, like you had to swear before, when everyone had to take the oath to answer these questions honestly, and that oath is that you would be a fair and impartial juror and that you would follow the instructions of the Court, and he would give you the instruction that you were to base your decision solely on the evidence, laying aside all the facts that you've heard, or the fact that your father may testify as a witness. With that in mind do you think you could be a fair and impartial juror and not lean one way or the other? MS. DRIGGERS: Yes."

Ms. Driggers responded to further questioning by defense counsel as follows: "I would tend to lean towards my father, naturally, but I can — I don't know anything of the case. He doesn't discuss any of them with me. And I could give an honest and fair answer. [DEFENSE COUNSEL]: You would consider it honest and fair to return the verdict [your] father wanted, wouldn't you? MS. DRIGGERS: Yes. [DEFENSE COUNSEL]: Tell me, do you understand the meaning of the word bias? What do you understand bias to mean? MS. DRIGGERS: That I will not go completely . . . [DEFENSE COUNSEL]: I don't know what you mean by go completely. But let me explain, if I may. A bias is simply a leaning one way or the other. If it is not absolutely perpendicular, absolutely straight up and down in the middle, if it leans one way or the other, it is biased. See what I mean? MS. DRIGGERS: Yes. [DEFENSE COUNSEL]: Now if your father is Deputy Sheriff and if your father is a witness in the case, wouldn't it honestly be true that there is some bias on your mind in favor of the State in the case? MS. DRIGGERS: Yes, sir."

After a bench conference, the trial court questioned Ms. Driggers: "THE COURT: Ms. Driggers, let me take one last shot at you. I understand that Deputy Parkerson is your father. Notwithstanding that fact, if you are selected to serve on this jury, can you return a fair and impartial verdict based solely on the evidence produced before you and the law as given you in charge by the Judge? Yes or no. MS. DRIGGERS: Yes, sir." Thereupon, the trial court concluded that Ms. Driggers was qualified.

Upon the conclusion of voir dire, the jury was selected. Defendant used all of his peremptory strikes. Nevertheless, Ms. Driggers was impaneled as a juror.

"Challenges are of two types, to the array and to the poll. Challenges to the poll, the individual juror, are either peremptory or for cause. Challenges for cause are made in one of two forms — for principal cause or for favor. Principal cause is disqualification based on

the grounds enumerated in OCGA § 15-12-163, i.e., the juror is not a citizen, is under 18 years of age, is incompetent because of mental illness, retardation or intoxication, or is so near in kinship to the prosecutor or accused as to disqualify him. *Jordan v. State*, 247 Ga. 328, 338 (276 SE2d 224). Challenges for favor, in a criminal case, are based on admission by the juror that he is biased for or against one of the parties, in response to questions authorized by OCGA § 15-12-164, i.e., whether the juror has formed and expressed an opinion as to the guilt or innocence of the accused, has prejudice or bias for or against the accused, is perfectly impartial between the state and the accused, and in capital felony cases is not conscientiously opposed to capital punishment." *Harris v. State*, 178 Ga. App. 735, 736 (344 SE2d 528).

Ms. Driggers was not subject to disqualification for principal cause. OCGA § 15-12-163 does not disqualify relatives of police officers, *Adams v. State*, 180 Ga. App. 546, 547 (2) (349 SE2d 789); nor does it disqualify relatives of State's witnesses, *Taylor v. State*, 243 Ga. 222, 224 (2) (253 SE2d 191); *Spence v. State*, 238 Ga. 399 (233 SE2d 363). It is only the near kin of the prosecutor, defendant or victim who is disqualified by law from serving on the jury. OCGA § 15-12-163. "[O]ne who is merely heavily involved in the transaction out of which the prosecution flows is not a 'prosecutor.' E.g., *Prysock v. State*, 44 Ga. App. 229 (161 SE 153) (1931)." *Spence v. State*, 238 Ga. 399, supra at 400. Thus, the mere fact that Ms. Driggers' father participated in the arrest of defendant and that he was a potential witness in the case (although he did not testify) does not mean that Ms. Driggers should have been disqualified. *Spence v. State*, supra. Compare *McKee v. State*, 168 Ga. App. 214 (1) (308 SE2d 574).

Defendant argues that, nevertheless, Ms. Driggers should have been excused for favor. We cannot find that the trial court erred by overruling defendant's challenge for favor. "The conduct of the voir dire and whether to strike a juror for cause, are within the discretion of the trial court, and the court's rulings are proper absent some manifest abuse of discretion. [Cits.]" *Taylor v. State*, 243 Ga. 222, 224 (2), supra. Ms. Driggers testified that she would lean toward her father's side of the case if he was interested in a conviction. She also admitted that if her father testified she would have "some bias" in favor of the State. On the other hand, Ms. Driggers averred that she did not discuss the case with her father. And when all was said and done, she testified that she could be fair and impartial and that she could render a verdict based solely on the evidence and the law. Accordingly, "[t]he trial court did not abuse its discretion in concluding that the juror exhibited no such bias as to fatally infect [her] verdict. *Welch v. State*, 237 Ga. 665, 671 (5) (229 SE2d 390)." *Watkins v. State*, 160 Ga. App. 9, 11 (4) (285 SE2d 758). "Although the juror's

first response to the questions put to [her] indicated a possible bias or prejudice on [her] part, the juror's opinion was not shown to be so ' "fixed and definite that it would not be changed by the evidence or charge of the court upon the trial of the case. (Cit.)" ' *Sullens v. State*, 239 Ga. 766 (1) (238 SE2d 864)." *Copeland v. State*, 162 Ga. App. 398 (1) (291 SE2d 560). See also *Lovell v. State*, 178 Ga. App. 366, 369-371 (343 SE2d 414).

3. In his next enumeration defendant contends the trial court erred by charging the jury: "It is your duty to reconcile conflicting evidence where that can be done so as to make all witnesses speak the truth, and so that perjury will be imputed to no witness. However, if there be evidence in the case in such irreconcilable conflict that this cannot be done, then you will accept that evidence which is most reasonable and credible to you."

We find no error in the charge. See *Cotton v. State*, 81 Ga. App. 753, 755 (59 SE2d 741). In our view, it does not, as defendant contends, "invade the exclusive province of the jury" by instructing them how to determine the truth.

4. The remaining enumerations of error are not supported by argument or citation of authority. Accordingly, we deem them to be abandoned. Rule 15 (c) (2) of the Rules of the Court of Appeals of the State of Georgia. *Johnson v. State*, 179 Ga. App. 467, 468 (6) (346 SE2d 903).

*Judgment affirmed in part and reversed in part. Sognier and Beasley, JJ., concur specially.*

SOGNIER, Judge, concurring specially.

I must concur in Division 2 of the majority opinion in light of the controlling precedent of *Spence v. State*, 238 Ga. 399 (233 SE2d 363) (1977). Having no doubt as to the truthfulness and the sincerity of the answers of the questioned juror sub judice, nevertheless, I must express my disagreement in principle with a practice that would allow the daughter or other close relative of the arresting officer to sit on the jury trying the arrestee. Courts are admonished not only to do justice but to give the appearance thereof.

BEASLEY, Judge, concurring specially.

Considering the circumstances of this case, I agree that the refusal to strike Ms. Driggers is not reversible error, but I also agree with Judge Sognier's disapproval of the practice. What saves it here are these combined facts: the juror stated with assurance that she could be fair and impartial, that she did not discuss the case with her father, and that she knew nothing about it prior to trial; the deputy sheriff played on a peripheral part in the case by assisting in the arrest, and he did not testify, so his credibility was not called in ques-

tion; defendant does not suggest that the deputy sheriff would have been called as an adverse witness regarding what occurred during the arrest, had his daughter not been on the jury. Finally, the "ifs" and "supposes" hypothesized in the voir dire questions which brought out the potential of a biased consideration of the case were not present. That is, the juror's father had not discussed the case with her or indicated any interest in it, and he did not testify so that any bias she might have towards his credibility was never called into play.

The trial court was able to observe this juror, and it carefully weighed the matter, even indicating that it pondered the challenge overnight.

In keeping with Judge Sognier's statement, we should beware of approaching the fine line when it comes to assuring that the members of the jury are fair and impartial, as guaranteed by Ga. Const. 1983, Art. I, Sec. I, Par. XI, especially since that assurance is incapable of exactitude in the first place, given the constraints of communication and the ability to ascertain men's minds.

Compare *Bass v. State*, 183 Ga. App. 349 (358 SE2d 837) (1987).

DECIDED APRIL 29, 1987 —
REHEARING DENIED JULY 31, 1987 —

*W. Washington Larsen, Jr.*, for appellant.
*James L. Wiggins, District Attorney, Michael T. Solis, Assistant District Attorney*, for appellee.